UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| TONY D. DAVIS | CIVIL ACTION NO. 19-0841 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| OUACHITA CORRECTIONAL CENTER, ET AL. | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Plaintiff Tony D. Davis, a pre-trial detainee at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed the instant proceeding on June 28, 2019, under 42 U.S.C. § 1983. He names the following defendants in their official capacities: OCC, Sheriff Jay Russell, Warden Pat Johnson, and Medical Coordinator Donna Norman.[1] For reasons that follow, the Court should retain Plaintiff's conditions-of-confinement claims against Sheriff Jay Russell and Warden Pat Johnson concerning mold, mildew, fungus, and bacteria.[2] The Court should dismiss Plaintiff's remaining claims.

**Background**

Plaintiff is a pre-trial detainee at OCC who has been awaiting trial since 2016. [doc. # 9, p. 1]. Plaintiff alleges that the air vents, air ducts, and showers at OCC "are covered in visible black mold, mildew, and fungus." [doc. # 1, p. 3]. In his amended pleading, he alleges that black mold, mildew, and fungus is present in the interior walls, on the floors, and on the ceiling

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] **Error! Main Document Only.** The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for these claims.

of the shower. [doc. # 9, p. 3]. Once each week, trustee prisoners attempt to clean some areas in OCC, but the bleach they use is "excessively diluted" and does not remove the offending substances. *Id.*

"Due to the constant exposure to the black mold, it has attached to [Plaintiff's] body progressively. [sic]." [doc. # 1, p. 3]. Plaintiff has been exposed to the black mold and fungus for approximately thirty-five months. [doc. #s 1, p. 3; 9, p. 3]. The mold and fungus caused his toenails to turn black, rashes to appear from his feet up to his ankles, itching, irritation, discoloration, peeling skin, restless nights, mental distress, pain, suffering, shortness of breath, headaches, nasal congestion, and a sore throat. [doc. #s 1, pp. 3-4; 9, p. 4].

Plaintiff claims that Defendants Russell, Johnson, and Norman all know of the mold, mildew, bacteria, and fungus. [doc. # 9, pp. 2-3]. They are also all aware that "the long term exposure to fungal substances, mildew, and (black) mold is harmful and dangerous." *Id.* at 3. Therefore, according to Plaintiff, these defendants "subjectively meant for harm to occur by not remedying the problem." *Id.* Plaintiff claims that the conditions amount to "a form of punishment . . . ." *Id.* at 4.

Plaintiff maintains that the "shower walls and ceilings are deteriorating due to the poor ventilation system." *Id.* at 4. "The vents and air duct[s] in the showers and the cells have been painted over, causing poor air circulation."[3] *Id.* "Vents have become infested with mold, mildew, and fungus bacteria, [and] these are the same vents that are connected to the main air duct and ventilation system that connects throughout the entire facility." *Id.* "The failure to

---

[3] Plaintiff does not appear to seek relief for either the deteriorating walls and ceilings or the painted-over air ducts and vents. Rather, it appears that he is describing the allegedly inadequate remediation efforts and the effects of the extensive mold, mildew, fungus, and bacteria. The undersigned will consider these allegations in connection with the conditions-of-confinement claim Plaintiff raises concerning the mold, mildew, fungus, and bacteria.

maintain adequate ventilation" forces Plaintiff to breathe mildew, mold, and fungus. *Id.* The poor ventilation subjects inmates to a "'bacteria gas chamber.'" *Id.*

Plaintiff claims that he wrote "a grievance concerning the mold in the showers in July of 2018, but [he] did not receive a response or [his] grievance back." *Id.* He adds that "there is a conflict of interest in the 'Administrative Remedy Procedure' at this facility," because a "majority of the staff members are family or friends which results in ARP's being lost, not answered in the required time period, or answered with a sarcastic remark but not remedying or addressing the problem." *Id.* at 4-5. He maintains that this conflict of interest violates "the Right of Access to the Courts." *Id.* at 4.

Plaintiff alleges that, on approximately August 2, 2016, or October 10, 2016, he "went to medical for jock itch/rashes" on his mid-lower body and that "it was determined that [he] had 'gout.'" [doc. # 9, p. 1]. He was prescribed anti-fungal cream, amoxicillin, and indomethacin. *Id.* Plaintiff claims that "this facility" misdiagnosed him, that gout was never the problem, and that he actually contracted a "fungus bacteria from the molded showers." *Id.* Plaintiff also claims that the facility charged him for gout medication. *Id.*

Plaintiff claims that, although Defendant Norman was aware that the side effects of his gout medication caused itching and peeling skin, Norman failed to "address the side effects with" him before "the issuance of the medication." *Id.*

Plaintiff claims that the anti-fungal cream "stopped the further spreading of the rash and the itching sensation, but it did not eliminate the problem entirely because the rash 'did not' fully go away." *Id.* He claims that he "was never scheduled for a follow up review to ensure that the medication issued was effective." *Id.*

3

Plaintiff alleges that, on approximately August 21, 2018, he was treated for "re-occurring symptoms of rashes, skin irritation, itching, [and] peeling skin that had risen from [his] feet," progressed to various spots on his legs, and "left permanent marks and visible skin damage." *Id.* He was again "issued anti-fungal cream, which only stopped the rash from spreading, but it never fully alleviated the problem." *Id.* The cream only "pacif[ies]" his ailments, and the medical staff knows that he will suffer severe, long-term effects from exposure to the mold and fungus. [doc. # 1, p. 4].

Plaintiff claims that he "was not given a follow up to check the condition of [his] health issues." [doc. # 9, p. 1]. Plaintiff claims that he was charged for care again. *Id.* at 1-2.

Plaintiff's rashes and black toenails remain, and he has "become mentally distraught, depressed, anxious, and mentally anguished from the extensive length of time that [he] has been suffering under these unhealthy living conditions . . . ." *Id.* On August 2, 2019, a physician prescribed Plaintiff Prozac to aid his mental-health symptoms. *Id.* at 2.

In his amended pleading, Plaintiff claims that the "shower floors are infested with worms and maggots." *Id.* at 4.

Plaintiff seeks punitive damages, $375,000.00 in compensatory relief, reimbursement for his past, present, and future medical expenses, treatment by a dermatologist and a lung specialist, an order instructing OCC to renovate the vents, shower stalls, and air ducts, an audit of medical records, an audit of the Administrative Remedy Procedure, an audit of all previous lawsuits against the Medical Department at OCC, and a transfer out of OCC. [doc. #s 1, p. 5; 9, p. 5].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638

6

(5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conclusory Claims**

In his amended pleading only, Plaintiff claims that the "shower floors are infested with worms and maggots" and that the insulation in the ceiling "possibly" contains asbestos. [doc. # 9, p. 4].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, even construed liberally and in his favor, Plaintiff's claims are entirely conclusory. As to his claim concerning worms and maggots, he does not identify a responsible defendant, he does not appear to seek relief, he does not clarify how extensive, pervasive, or widespread the worms and maggots are, and he does not allege that the presence of worms and maggots caused him injury. As to his entirely speculative claim concerning possible asbestos exposure,[5] he does not identify a responsible defendant, he does not claim that he has, in fact, been exposed to asbestos or that the ceiling does, in fact, contain asbestos, and he does not definitively allege that possible asbestos exposure caused him injury. Overall, he does not disclose enough facts to state plausible claims. The Court should dismiss these claims.

---

[5] See *Clarke v. Collins*, 5 F.3d 1494 (5th Cir. 1993) (rejecting, as speculative, an inmate's claim that he was "exposed to the AIDS virus and other diseases in the common showers.").

7

**3. Medical Coordinator Norman's Involvement**

Plaintiff seeks relief from Sheriff Jay Russell, Warden Pat Johnson, and Medical Coordinator Donna Norman for the presence/prevalence of mold, mildew, fungus, and bacteria. The Court should retain this conditions-of-confinement claim against Sheriff Russell and Warden Pat Johnson. However, the Court should dismiss this conditions-of-confinement claim against Medical Coordinator Norman.[6]

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff alleges that Norman "is responsible for the overseeing and supervising of how medical assistance is administered and the overall liability of the inmates health condition while housed at this facility. [sic]." [doc. # 9, p. 3]. Norman is "aware of the fungus, mold, and bacteria . . . ." *Id.* Norman "knows that the long term exposure to fungal substances, mildew, and (black) mold is harmful and dangerous." *Id.*

---

[6] Below, the undersigned addresses Plaintiff's claims of inadequate medical care against Norman.

8

Plaintiff, however, does not allege that Norman was personally involved in confining him under, failing to remove him from, creating, or failing to ameliorate the allegedly offending conditions.[7]

## 4. OCC

Plaintiff names OCC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. OCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against OCC.

## 5. Responding to Grievances

Plaintiff claims that he wrote "a grievance concerning the mold in the showers in July of 2018, but [he] did not receive a response or [his] grievance back." [doc. # 9, p. 4]. Plaintiff also claims that "there is a conflict of interest in the 'Administrative Remedy Procedure' at this facility," because a "majority of the staff members are family or friends which results in ARP's being lost, not answered in the required time period, or answered with a sarcastic remark but not remedying or addressing the problem." *Id.* at 4-5. He maintains that this conflict of interest violates "the Right of Access to the Courts." *Id.* at 4.

A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v.*

---

[7] Plaintiff does not allege, for instance, that Norman failed to relay his concerns to someone with authority to remediate, or remove him from, the offending conditions.

9

*Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."); *Geiger*, 404 F.3d at 371.

Moreover, Plaintiff does not allege that he suffered injury due to either the alleged conflict of interest in the "Administrative Remedy Procedure" or the failure to respond to his grievance. To state an access-to-court claim, a plaintiff must allege a cognizable injury. See *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

The Court should dismiss these claims.

**6. Medical Care**

Plaintiff raises several claims concerning inadequate medical care. A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

10

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff first alleges that, on approximately August 2, 2016, or October 10, 2016, he "went to medical for jock itch/rashes" on his mid-lower body and that "it was determined that [he] had 'gout.'" [doc. # 9, p. 1].  He was prescribed anti-fungal cream, amoxicillin, and indomethacin.  *Id.*  Plaintiff claims that "this facility" misdiagnosed him, that gout was never the problem, and that he actually contracted a "fungus bacteria from the molded showers."  *Id.*

Plaintiff appears to fault OCC (i.e. "the facility") for his misdiagnosis, but OCC is, as above, unamenable to suit.  Plaintiff does not allege that any other defendants are responsible for his misdiagnosis.  Even to the extent he did so allege, a misdiagnosis, alone, does not amount to a plausible claim.  See *Brown v. Megg*, 857 F.3d 287, 289 (5th Cir. 2017) ("That [the physician] may have . . . gotten the diagnosis wrong does not establish that he 'refused to treat [the plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"); *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 344 (5th Cir. 2016) (reiterating that a misdiagnosis is

11

an act or omission that "is insufficient to establish deliberate indifference[.]"). The Court should dismiss this claim.

Plaintiff claims that the facility charged him for gout medication. [doc. # 9, pp. 1-2]. "There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (cited with approval by *Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (cited with approval by *Morris*, 739 F.3d at 748). Here, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged. The Court should dismiss this claim.

Plaintiff claims that, although Defendant Norman was aware that the side effects of his medication caused itching and peeling skin, Norman failed to "address the side effects with" him before "the issuance of the medication." [doc. # 9, p. 1]. However, a "claim that prison doctors failed to advise [a plaintiff] of the side effects of medication, for which he received medical care, is not cognizable under 42 U.S.C. § 1983." *Dallas v. Stalder*, 73 F. App'x 79 (5th Cir. 2003); *Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013). Norman's alleged inaction amounts to no more than possible negligent conduct, and, as above, "acts of negligence do not constitute deliberate indifference[.]" *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). The Court should dismiss this claim.

Plaintiff claims that "the only medication issued for exposure to the black mold and fungus [was] antifungal cream." [doc. # 1, p. 4]. He claims that the anti-fungal cream "stopped the further spreading of the rash and the itching sensation, but it did not eliminate the problem entirely because the rash 'did not' fully go away." [doc. # 9, p. 1]. The cream only "pacif[ies]" his ailments, and the medical staff knows that he will suffer severe, long-term effects from exposure to the mold and fungus. [doc. # 1, p. 4]. He adds that, on approximately August 21, 2018, he was treated for "re-occurring symptoms of rashes, skin irritation, itching, [and] peeling skin that had risen from [his] feet," progressed to various spots on his legs, and "left permanent marks and visible skin damage." [doc. # 9, p. 1].

Plaintiff, however, does not identify a responsible defendant. Even assuming he did, he simply disagrees with the treatment he received. See *Alton*, 168 F.3d at 201 ("Actions and decisions by officials that are merely . . . ineffective . . . do not amount to deliberate indifference . . . ."). While Plaintiff suggests that he should have received better or more effective care, his disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim under the Eighth Amendment. See *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977)); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985).[8] The Court should dismiss this claim.

---

[8] See also *Frazier*, 707 F. App'x at 824 (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

13

Finally, Plaintiff claims that, in 2016, he "was never scheduled for a follow up review to ensure that the medication issued was effective." [doc. # 9, p. 1]. He also claims that, in 2018, he "was not given a follow up to check the condition of [his] health issues." *Id.* Plaintiff, however, does not identify a responsible defendant. Even assuming he did, his allegation reflects only a simple disagreement with the treatment he received.[9] See *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995) (finding that allegations of not receiving follow-up examinations did "not rise to the level of deliberate indifference" because "[a] mere disagreement with one's medical treatment is not sufficient to state a cause of action . . . ."); *Oakley v. Hudson*, 670 F. App'x 291, 292-93 (5th Cir. 2016). The Court should dismiss this claim.

### 7. Standing

Plaintiff appears to raise several claims on behalf of other prisoners at OCC. For instance, he claims that "other inmates are being affected by the black mold, fungus, mildew, and bacteria[,]" that the conditions are a form of punishment to "those with allergies and acute asthma[,]" and that "inmates receive retaliation from staff members for filing complaints or voicing concerns about potential problems." [doc. # 9, pp. 3-4].

To the extent Plaintiff seeks to pursue relief on behalf of these prisoners, he lacks standing. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to

---

[9] Plaintiff does not contend, for example, that any defendant deliberately delayed his audience with a physician.

14

the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); see *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[10]

In addition, Plaintiff may not act as counsel for other prisoners. See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer. See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

As Plaintiff lacks standing to pursue relief on behalf of other prisoners, the Court should dismiss these claims.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, to the extent Plaintiff Tony D. Davis raises claims on behalf of other prisoners, the claims be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

**IT IS FURTHER RECOMMENDED** that, with the exception of Plaintiff's conditions-of-confinement claims against Sheriff Jay Russell and Warden Pat Johnson concerning mold,

---

[10] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

mildew, fungus, and bacteria, Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of September, 2019.

Karen L. Hayes
United States Magistrate Judge